We'll hear argument first this morning in Case 11-45, Elgin v. Department of the Treasury. Mr. Schwartz. Mr. Chief Justice, and may it please the Court, the question in this case is whether it is fairly discernible from the Civil Service Reform Act that Congress revoked the district court jurisdiction to declare acts of Congress unconstitutional in actions brought by Federal employees. The answer is no, for several reasons. First, the Civil Service Reform Act doesn't say that it precludes Section 1331 jurisdiction. Congress could have said so. Congress didn't say so. And there's no inference of preclusion of the Petitioner's claims that's fairly discernible from the scheme itself. And that's because challenges to constitutionality of statutes are just not the type of claims that are reviewed through the CSRA scheme. Because of this, the Merit Systems Protection Board dismisses challenges to constitutionality of a statute routinely as outside of its authority. Yes. Mr. Schwartz, suppose an employee is fired and he has a variety of different kinds of claims, constitutional and statutory, what would you think happens then? Does he bring the constitutional claims in one court, but the statutory claims in another in the commission? No, Your Honor. I believe that because of normal rules against splitting of claims, the employee would have to make a decision. Well, that seems just as bad. In other words, that then you — it's not inefficient necessarily, but your scheme would force the employee to choose between her constitutional claims and her statutory claims. That is correct. Why would we do that? Because of the importance of making the constitutional claims available in a judicial review. That is — that's just one of the options that the employee would have to weigh. Why would you make that concession? Why wouldn't it be possible in that — for an employee to choose if the employee had both constitutional and nonconstitutional claims, perhaps that employee could take advantage of the review scheme that's outlined by the government, but in the situation where there's purely a challenge to a statute, the employee would have the option of bringing the claim in one of the district courts. That certainly is a possibility, Your Honor. And it is a possibility that the employee could bring his constitutional claim in the district court and still pursue his statutory claim before the Merit Systems Protection Board. However, I'd like to point out that while this is an interesting hypothetical, we don't have to look at hypotheticals in this situation, because we have in the Third Circuit since 1986 and in the District of Columbia Circuit since 1995, those two circuits permit Federal employees to bring their constitutional claims in the circuit court We are unable to find a single instance in which there's been one of these mixed claims of a constitutional claim and a statutory claim brought in the district court. Scalia In those cases, did the plaintiffs also have nonconstitutional claims which they were pursuing in the Federal circuit? We are unable to find any example of that. Scalia Well, that's the problem here. I mean, yes, if all you have is a constitutional claim, I suppose the system you propose would work. You go to the district court. But where you have both, it's a problem. And I agree that that is a more difficult situation, but it's not the situation presented by the facts of this case, at least. Kagan You suggested that it's a situation that doesn't often arise, and I guess that puzzles me. Why wouldn't it often arise? I don't know why it doesn't often arise. It might be that people prefer to leave their claims in the Merit Systems Protection Board. Kennedy What would happen if the employee is fired because of his or her religion, and he goes to MSPB, and says this is a First Amendment claim. MSPB has to say, well, this is not adequate cause, and they find something else in the statute. It can't look at the constitutional aspect of the claim? Kagan Your Honor, if an employee is fired because of his religion, there's a separate procedure for discrimination claims, such as could be brought under Title VII. And in fact, those claims do go directly to the district court. Kennedy Well, then I have to do a new hypothetical.  Warming or something? Kagan Yes. That claim now could be brought before the Merit Systems Protection Board, and I agree that it can be brought before the Merit Systems Protection Board. And I'm not urging this Court to say that the MSPB says we can't look at the First Amendment. Roberts No, no. I'm sorry, just to clarify, no, they wouldn't say that, or I lost this, which way your no was going there. Kagan Okay. I'll retract my no, then. Ginsburg Mr. Schwartz, I thought you're talking about the constitutionality of a statute. Kagan That's it exactly, Your Honor. Ginsburg Not any constitutional claim that has been unconstitutional action by an official. I thought that your point was when you're challenging the constitutionality of a statute, then you have a right to go to the district court. Kagan That is my point exactly, Your Honor. Roberts Could I please clarify your answer to Justice Kennedy before we move on? Go ahead. Schwartz Yes. I'm drawing a distinction between a challenge to the constitutionality of a statute, as the Petitioners are doing here, and that is beyond the authority of the Merit Systems Protection Board. Sotomayor Are you talking about a facial challenge to the statute? As a — and am I understanding you right, a facial challenge goes to the district court, a constitutional as-applied challenge goes to the commission? Schwartz Yes, and that's the procedure, the as-applied challenge, those cases are bread-and-butter cases at the Merit Systems Protection Board now. If somebody says, I was fired because I wrote a letter to the editor that my boss didn't like, he's not challenging the constitutionality of a statute. Kennedy But I was leading up to the fact, why should there be a difference if the MSPB has this expertise in as-applied, why doesn't it have it for facial? I mean, the expertise question is that it can't be a matter of expertise, or am I wrong  Schwartz Well, I, with due respect, I disagree with you, Your Honor. The expertise required to decide the present Petitioner's claim and the letter to the editor claim is totally different. In the letter to the editor claim, the facts concern the facts of the workplace. What was my boss's motivation? What were his actual reasons for firing me? Scalia Well, and whether that reason was justifiable. And isn't it the case that whatever the reason is an unconstitutional reason, you would have an as-applied challenge, right? Schwartz Yes. Scalia So why do you need a facial challenge in addition? I thought that we always try to do as-applied first and facial second. So why isn't it enough that you can go to the Merit System Protection Board and then to the Federal Circuit saying that this action was wrong and not allowed under the statute? And if the reason it was wrong was that it was unconstitutional, what's the problem? Schwartz Justice Scalia, I agree that in the as-applied challenge where somebody says my rights were violated, that case now goes and should go to the Merit Systems Protection Board. In the present case, there's no challenge to the application of a statute. There's no challenge to any decision that was made by managers. The challenge is to the decision made by Congress. And that's the rule. Roberts That's the rule that you would apply across the board. So law only in the case of a facial challenge do you get to go to the district court. If it's an as-applied, this law was unconstitutional as applied to me, that's   Yes. And and and and and and Sotomayor Could you tell me how how would how this is any different than the administrative system and review system that was reviewed in Thunder Basin and Illinois' long-term care? In both those statutes, the agencies weren't permitted to consider facial challenges, constitutional challenges, and we said that's okay, they can't, but the reviewing court can. So how is that any different from the situation you're proposing here? There's several significant differences. I'd like I'd like to go through them. First of all, in the Thunder Basin case, the the the constitutional challenge was was to the procedures that that were being applied. The the agency, the Mine Safety Commission, was was an expert in those procedures. The facts that were involved in making that determination were the very facts that this Mine Safety Commission had expertise in. In the present case, the challenge is to the selective service laws. The Marriage Systems Protection Board But please deal with the language of both cases. Both cases said even if the agency can't review a constitutional challenge, there's still review within the Federal Circuit, within the court within the circuit courts, and that's okay. Yes. So why isn't that okay here? I think that was Justice Scalia's question to you. I know that you say, well, the Federal Circuit won't have a record, but the government says if it wants a record, it can remand and ask the agency to develop it. So what's wrong with that procedure? The first thing that's wrong, that's wrong with that procedure, as it would be applied to this case, is that it's a vast departure from the Civil Service Reform Act scheme as it was created by Congress, and because that scheme involves the Marriage Systems Protection Board acting as a trial court and giving the first level of review and, in effect, substituting for the for a district court. And that, and that's Sotomayor, isn't one of the challenges here by one of the Petitioners that he was constructively discharged? Isn't that an issue that the Board is better suited to determine in the first instance, whether there was at all a constructive discharge? Well, in fact, it's just the reverse of that, where that one Petitioner would be taking the position that he was not constructively discharged. If he was constructively discharged, the Marriage Systems Protection Board arguably would have jurisdiction. If he voluntarily resigned, under the government's theory, he would be among the class of Federal employees, the Constitutes got a third of Federal employees, who have no appellate rights to the Merit Systems Protection Board. I thought your position was that the Merit Systems Protection Board has said, we have no authority to adjudicate constitutional questions, period. Yes. So I thought the Court was saying, this claim is dismissed because we don't have jurisdiction to deal with that kind of question. And then the next, the Federal Circuit, well, how can the Federal Circuit exercise jurisdiction over a claim where the first instance decisionmaker said it didn't have authority to render the decision? Yes. I thought that that's what your position was. That is what our position is. And it leaves open the question of just what the Federal Circuit is going to do after the Marriage Systems Protection Board has dismissed the lack of jurisdiction. But that's not your position as I understood it in your response to my earlier question. You said that the --"it is all right to have as applied constitutional challenges presented to the MSPB or not presented, but then reviewed in the Federal Circuit." My position is that if the MSPB has jurisdiction to find a statute, that since the MSPB does not have jurisdiction to find a statute unconstitutional, any claim in which the employee is asking for them to find a statute unconstitutional is one that is outside of the CSRAP. Roberts. But within the statutory scheme, are you saying that a claim that this statute is, while not facially unconstitutional, unconstitutional as applied to me, where does that go? Well, Mr. Chief Justice, I apologize for my confusion about the use of the term as applied. Well, I would defer to you, Your Honor. Okay. Well, where does that claim go? My confusion is about the use of the term as applied. And I'd rather than using terms such as facial or as applied where the dividing line can be somewhat blurry, I propose drawing the dividing line between a case where the employee is saying this statute is unconstitutional, I'm saying Congress made a mistake. Well, why wouldn't the dividing line be, and I think that this is consistent with your argument, the dividing line should be where the MSPB itself could decide the claim. Yes. If the MSPB can decide the claim, then it goes to the MSPB. If the MSPB can't decide the claim, I think is what you're saying, then it has to go to the district court. Yes. And you're saying that the MSPB has said that although it can decide, can decide cases where it says, you know, my supervisor fired me for a discriminatory reason, that that's within the scope of the MSPB's authority, a claim like this, which is that the Selective Service Act is unconstitutional, full stop, is not within the scope of the MSPB's authority, is that right? Yes, that's absolutely correct. And the cases that would not be within the MSPB's authority would include cases where the employee says the statute is unconstitutional and would also include the million or so Federal employees who, as the government says, have no appellate rights to the MSPB. All of those persons, career, those persons would include summer interns, FBI employees, those types of people. What type of summer interns and FBI employees? Yes. I assume that's for very different reasons. One, because they're summer interns and, you know, if they are impermissibly treated, it's kind of, they're summer interns, there's no reason to get. No, I don't mean that facetiously. I mean, what they're saying is that there's some level of de minimis personnel actions when you're talking about the vast Federal bureaucracy that we don't have to really give, you know, the whole panoply of rights. And FBI agents, I assume, because it's the sensitive nature of what they deal with. So I guess what I'm saying is, do you want us to focus on the millions of employees who would now be going to district court, or do you want us to focus on the small number that have facial constitutional challenges? Well, actually, Your Honor, it's the government that is taking the position that the summer interns, the FBI agents, all the government attorneys, Federal government chaplains who have no right to appeal to the MSPB, all of those persons, the government says, can bring their constitutional claims to the district court. And why is that wrong? It seems to me that's what the Administrative Procedure Act says, that if there is no other effective means of judicial review, you get judicial review under the APA. These people have no effective right because they can't go to the MSPB and can't go to the Federal circuit, so they have rights in the district court. That's not a problem. The problem is the people who do have rights to go to the Merit Systems Protection Board, right, who have constitutional claims based on the unconstitutionality of a statute. Well, I disagree with that, Justice Scalia. Why? Because the summer intern, the FBI agent, the nonpreference employee, the accepted service employees, unless they have a claim that they can take to the Merit Systems Protection Board, they are precluded from going to any other court. They are precluded under the Administrative Procedure Act. That's this Court's Fausto decision. And in this Court's Fausto decision, a Federal employee who could not bring a case, his appeal to the Merit Systems Protection Board, tried to bring a back pay act claim in the court of claims, and this Court said, no, that is precluded. And what the government is doing is saying you've got a right in Fausto, but for constitutional claims, Mr. Fausto had a right. Scalia, but that's entirely logical. Fausto, in effect, said that the statutory structure simply provides no cause of action for these people, okay? They are not entitled to anything. But I don't think that there's anything in the civil service laws that say these people are not entitled to constitutional protections. So I don't think that Fausto rules this out. Well, I agree with you completely that constitutional claims are different from statutory claims. Exactly. And it's those that I say that people not covered by appeals to the Merit System Protection Board, they can bring those constitutional claims, even though they can't bring statutory claims. Yes, and that's the position I'm taking. I'm taking it a step beyond the government. Oh, no, yes, you're taking it. I'm saying that's true only with respect to those people who have no right to appeal to the Merit Systems Protection Board. You're going further. Yes. And you're saying even the people who can appeal to the Merit Systems Protection Board, right, can go directly to the district court. That's a different question. But I'm limiting that to those people who can appeal to the Merit Systems Protection Board, but the Merit Systems Protection Board has no authority to grant them a relief. There are at least three different kinds of constitutional claims, and I'm not sure where you're drawing the line with respect to your argument. There's a claim that the agency acted in an unconstitutional manner, not that any statute is unconstitutional, but there's unconstitutional executive action. There's an as-applied claim. Let's say that a plaintiff says that the registration requirement is unconstitutional as applied to me, not to other people, but to me because I'm a conscientious objector or I have religious objections to military action that the United States is taking at this particular time. And then there's a claim that the statute is unconstitutional on its face. Now, where do you – which of those can the Merit Systems Protection Review Board decide? Just the first category? Just the first category. So it's not a distinction between as-applied and facial? No. No, no.  and facial. I thought your position was whatever the MSPB cannot hear, then you can go to the district court. That is absolutely correct. Now, in your original briefs, Mr. Schwartz, you suggested that if the MSPB can't hear a claim, neither can the Federal Circuit. And as I understood the government's brief, the government comes back and said that's not the case. Even when the MSPB can't hear a claim, the Federal Circuit could hear it. Now, then there's a question of if there's a necessity for a record, how does the record get developed? But do you now concede that the Federal Circuit could hear the claim as a matter, you know, on the – at the first level? I agree that a system can be proposed to get these claims to the Federal Circuit. However, it's not the system of the – that Congress created in the Civil Service Reform Act. And the significance of the contortions that have to be gone through to get these claims to the Federal Circuit demonstrates that it's not fairly discernible from the Civil Service Reform Act as written by Congress that the MSPB has no jurisdiction and saying it has no jurisdiction and can't adjudicate this matter, well, then a reviewing court has no jurisdiction to adjudicate this matter. To review, there's nothing to review because the MSPB said we have no jurisdiction. That's how it would work in the real world. I mean, what is the Federal Circuit supposed to do that has an order from the MSPB that says we dismiss for lack of jurisdiction? The Federal Circuit and the government doesn't say that that is wrong. The Federal Circuit says we affirm your dismissal and now we'll move on to the merits. That – it's possible we could have a system like that, but that isn't the system of the Civil Service Reform Act, and that's not the way that appellate courts normally function. Roberts' Is it really a question of jurisdiction of the MSPB? Well, jurisdiction is a word with many meanings. Yes, and – and there's a general rule with that there have been exceptions to that administrative agencies do not have authority to rule on constitutionality of statutes. Breyer, so what's the problem? He says the employee says I was dismissed, the MSPB says that's right, you were, and it's lawful. The employee says you didn't consider my argument that the relevant statute was unconstitutional. MSPB says, no, we can't. The Federal Circuit says, but we can, so make your argument. What's the problem? And then they'll decide it. And if they decide it's unconstitutional, then the action of the MSPB is wrong. That's a system that – that could come up. It's not the system of the Civil Service Reform Act. Because – I don't know. I'm just saying, is there any practical problem with that? Oh, it presents immense practical problems. Which is? Which is that the Merit Systems Protection Board is not going to say we affirm your dismissal, or that it's not going to reach the merits. It's going to – it's going to get the paperwork, the government is going to – Fine, fine. What they say is you have one argument here, that the statute that led to your dismissal is unconstitutional. Yes. We do not have jurisdiction over that. Therefore, we say you were rightly dismissed. Now, they appeal that, and they say they're right that they didn't, but you do, so will you please decide that this statute's unconstitutional? What's the problem? Well, that's an unusual form of – I mean, it may be unusual. I just want to know what's the problem. I'm not saying there isn't one. I want to know what's the problem with that. The problem, if that is the system that's going to be in place, is that it's not quite that straightforward. It's at first the employee has to file his claim in the MSPB with everybody knowing it's going to be dismissed. He then appeals that dismissal to the Federal Circuit. Which affirms the dismissal. It says, yes, MSPB has no jurisdiction. No, it doesn't affirm the dismissal. It says the dismissal was unconstitutional. Go reinstate it. And then in a case such as this one, where the reason that this challenge to Rosker is that the facts have changed, there was extensive factual discovery in Rosker. So the point was, and hasn't the Federal Circuit says, if the MSPB has no jurisdiction to decide, we have no jurisdiction to review? That's what the Federal Circuit has said. An appellate court is reviewing a quarter-first instance. The scheme that has been proposed would turn the Federal Circuit into a quarter-first instance rather than an appellate court. And that is why what's proposed by the government is such a departure from the CSRA scheme as written by Congress, in which MSPB has first instance jurisdiction, the Federal Circuit has appellate jurisdiction. Kagan. Isn't your basic answer to Justice Breyer, I mean, correct me if I'm wrong, you think that the problem is that there's no record that the Federal Circuit can use to evaluate this constitutional claim? That is correct. Well, we, every day of the week, we get constitutional claims and people submit all their arguments in the briefs. Now, occasionally there's one you have to have factual development, and I grant you on that one maybe they could appoint a special master or not send it back, but they have plenty of authority to get them to argue the facts. But I doubt, I don't know if there are such claims, but I don't see why that would be a problem. Now, I'm not, again, I'm not giving you an answer, I'm giving you a question. The problem is that that's not the scheme written by Congress. That's your conclusion, and I want to know what is the practical reason that that wouldn't work, or why is that such a big problem to have it work that way? I'm asking for your answer on that. Okay. I mean, that system could work in some cases. I agree with that. Give me one where it wouldn't. Excuse me? Give me one where it wouldn't, but I don't want to cut into your time. Your time's up. So you can be thinking about it and if you want to respond. Okay. Ginsburg. I thought you said this one. Yes. This one, because you want to make a record of all the changes that have occurred in the service, and you need much more than briefs. You need to have maybe testimony from people who have been working with the changes in the opportunities for women in service. Yes, that's correct. This case would be the example. If there are no further questions, I'd like to reserve the balance. Thank you, counsel. Mr. Fagan. Thank you, Mr. Chief Justice, and may it please the Court. I'd like to begin, if I could, by addressing the question asked by Justice Kagan, which is why shouldn't the scope of the MSPB's authority be the test for determining whether a claim can be filed in district court? And I think using that as the test would lead to unclear and easily manipulated jurisdictional rules. Among other things, it often won't be clear up front whether the MSPB can resolve an employee's claim or not. A claim that appears at first blush to challenge a statute's constitutionality might be resolved, for instance, by interpreting the statute to avoid the constitutional question, which is something the MSPB could do. Kagan, if I could just ask the MSPB, Mr. Fagan, if you bring the claim to the MSPB and then the MSPB says, no, we have no authority to adjudicate this claim, then you know you're in a world in which the MSPB doesn't have authority so that you can go to the district court. Well, I don't think that's consistent with the CSRA, Your Honor, because the way the CSRA works is that you go to the MSPB first and then you go to the Federal Circuit. And I think everyone agrees that the Federal Circuit's position is that the CSRA and the MSPB actually can decide something. I don't think it's presuming that any more than 42SC405G was presuming that in Illinois counsel or the Mine Act was presuming that in Thunder Basin Coal. That is, it's often useful to have constitutional claims presented to an agency in the first instance, even if the agency can't resolve those claims, because it allows the agency to figure out, for example, in the case that this Court was discussing with Mr. Schwartz about circumstances where there might be nonconstitutional claims and constitutional claims, the agency might be able to moot out the case on nonconstitutional grounds. Constitutional. Ginsburg. Those statutes to which you refer said that no action on the claim was for Social Security benefits, no action shall be brought under 1331. There's no such provision here. That was true in Illinois counsel and some of the other cases we cite. But in Thunder Basin, the Court was very clear that the statute was facially silent as to the preclusion of preenforcement claims like the sort that were at issue in Thunder Basin. The Court nevertheless held that the claim in Thunder Basin was precluded, and it held that even though it acknowledged that it might be possible that the constitutional claim that was raised by the plaintiff in that case couldn't be addressed in the first instance by the Mine Commission. Now, the MSPB here is very analogous to the Mine Commission. Kagan. Well, could you help me with something? Because I agree with you. Thunder Basin is a very strong case for you, but McNary is a very strong case for Mr. Schwartz. And I read those two opinions, and frankly, I have a tough time reconciling them. So could you tell me how you do? We prefer Thunder Basin, Your Honor. Yes, I imagine so. Your Honor, I think as we suggest in our brief, McNary actually presented a very specialized circumstance in several respects. First of all, there was a special statutory provision in that case that limited judicial review of the record that had already been developed, and that's not true here. Second, the Court was very concerned in McNary that if the plaintiffs weren't allowed to bring their claims in district court, they wouldn't be able to receive any meaningful judicial review at all. Now, here the plaintiffs in this case can get meaningful judicial review from the Federal Constitutional challenge to a statute. Now, if I could, I'd like to address, I think, some confusion, as the Chief Justice was noting, over the meaning of the term jurisdiction and exactly what would happen if the Petitioners had brought this case in the first instance to the MSPB. Now, before getting into this, I'd like to acknowledge that when Petitioner Elgin did bring this case to the MSPB, the government argued that the MSPB had no jurisdiction. We have conceded below and we concede here that we were wrong about that. We do not think Elgin should be prejudiced by the government's position if he were to file a motion now to reopen his case to the MSPB, the government would support that. Here's how it should have worked if the government had not brought this case in. Sotomayor, is that your answer for that's why it's an out for their failure to have gone to the Federal Circuit? Our answer, our answer is that if the Commission says, no, we won't reopen, do they have any avenue now to go to the Federal Circuit? Well, they can appeal that decision to the Federal Circuit, and the government will, again, support the fact that the case ought to be reopened. Please finish with your answer. And let me now address what should have happened when the case went to the MSPB. The MSPB would have had jurisdiction over the case in the sense that the challenge to the adverse action is properly before the MSPB. I think that's very clear under 5 U.S.C. 7513d and 5 U.S.C. 7701a, which grant the MSPB jurisdiction over adverse actions under the CSRA. Now, the MSPB would not be able to adjudicate the constitutionality of the case, would not be able to issue an order striking down a Federal statute. And to determine that that would be what would be necessary here in order to grant the plaintiff's relief, what it would have done is, first of all, it could have accepted any evidence that the plaintiff's or the government wished to submit on the constitutional issue in order to build up the administrative record. Roberts. Roberts. Can I ask you to pause briefly on that question? So the government, if Mr. Schwartz comes in before the MSPB and says, we have three articles on the constitutional issue, I have this volume of evidence about what's happening in the military, it's only relevant in the constitutional issue, and, you know, it's going to take us two days to present this, the government is going to say it's okay with us, right? We're not going to object that that's beyond the jurisdiction of the agency to decide. We will not object that it's beyond the jurisdiction of the agency to decide. Scalia. Well, I will object. What is the agency taking evidence on an issue that it has no jurisdiction to decide? That is absolutely weird. Well, Your Honor, I think this is fairly analogous, although not perfectly analogous, to the fairly common circumstance where, for example, a district court reserves to itself a decision on the merits of an action and then delegates to a magistrate judge decisions on discovery. Now, the only limitation is that the magistrate can come back to the district court judge and say, we have a tough one, Your Honor, why don't you decide it? I mean, here you're stipulating that the board has no power to decide this question. Call it jurisdiction, call it something else. The board cannot decide the question. But the board is going to now become the arbiter of discovery disputes, the fact-finder? I mean, weird is a good word for it. Well, first of all, Your Honor, the only thing that we think the MSPB lacks authority to do, the only thing, is to issue an order on the merits declaring a Federal statute unconstitutional. It is competent to resolve discovery disputes. How can it deal with discovery without knowing, without going into the merits of the constitutional claim? In other words, the parties can just put in any evidence they want, any evidence they think might possibly be relevant to the case, they can put that in. It can be discovery of anything. Well, there may be disputes as to the scope of discovery, and those resolution of those disputes may touch on the merits. We think the MSPB can do all of that. The only thing the MSPB lacks authority to do, according to the MSPB, is to issue an order striking down a Federal statute unconstitutional. Do you think the MSPB should find facts with regard to this claim? Well, first of all, Your Honor, I think this case isn't going to require any fact finding, because I think it's worth noting that both judges that have addressed Petitioner's arguments on the merits, the district court judge and the concurring judge in the court of appeals are able to resolve the claim without fact finding. I would think, Mr. Feigin, it would depend on how it's litigated. But in a case in which there is some fact finding to be made, would the MSPB have authority to find facts? Yes, it would, Your Honor. Now, I'd like to add that in many cases the MSPB has authority to find facts. Can you go back and tell me when the government changed its position? It was my understanding that up until, well, certainly this case was litigated, the government was taking the position MSPB has no jurisdiction to pass on the constitutionality of a statute. When did the government back away from that position? When did it say, no, we were wrong, they do have jurisdiction? Well, Your Honor, I need to separate out two things. First, it is still our position that the MSPB has no authority to declare a Federal statute unconstitutional. Now, the government was taking the position that in cases where an employee had been removed pursuant to a statutory bar, that the MSPB lacked jurisdiction to hear an appeal of a case like that. And the reason the government argued was not because the MSPB lacked authority to decide the constitutionality of a statute, although we believe that, too, but because the government was arguing erroneously that an employee who was removed based on a statutory bar that should have prevented his hiring in the first place wasn't an employee within the meaning of 5 U.S.C. 7511. Now, the government no longer takes that 5 U.S.C. 7511 position. We have been consistent on that in the court of appeals and in this Court, and therefore we believe that the MSPB did properly have jurisdiction over the action in this case. Now, when it goes up to the MSPB, the MSPB would then deny relief on the merits because it would lack the authority to declare a Federal statute unconstitutional. Breyer, I don't want to delay you, so don't pause too long, but I've just been curious. Where did this rule? Is there a statute or something that says an agency can't say that this action would be unconstitutional? Where does that idea come from? So there is not a statute, Your Honor. This Court has said in several cases that administrative agencies generally lack the authority to declare a statute unconstitutional. It's clear from Thunder Basin that that isn't a constitutional limitation on the authority of Federal agencies. That is to say, if Congress wanted to give an agency the authority to adjudicate the constitutionality of a statute, it could. And the Court noted that the Mine Commission in Thunder Basin believed it did have the authority to adjudicate the constitutionality of statutes, although the Court didn't reach whether the Mine Commission was correct about that. And in this case, the MSPB believes, consistent with this Court's repeated statements, that it lacks authority to adjudicate the constitutionality of statutes. Now, if the Court decides that the best way to reconcile this scheme would simply be to say that the MSPB does have the authority to adjudicate the constitutionality of statutes, I think that would make much more sense than the position the Petitioners are urging. And here's an example, I think, that illustrates why the position the Petitioners are urging will lead to confusion of jurisdictional rules and manipulation of jurisdictional rules. So if you imagine two employees who were fired by an employing agency for leaking information to the press, confidential information to the press, they both challenged their removals, but they raised slightly different arguments. The first one says, well, I don't think the employment statute should be construed to allow me to be fired for this reason, because I think the employment statute should be construed with First Amendment principles in mind and shouldn't reach this case. The second one says, I concede that the employment statutes allow my firing for this reason, but I think those – I think that statute is unconstitutional as applied. Now, those are really the same claim, and – Kagan, they might well be the same claim, but if the MSPB can decide the one and cannot decide the other, that's a relevant distinction. Now, you might be right in what you said. Well, maybe one answer is that the MSPB can decide both. But as long as the MSPB can decide the one or the other, it seems great – I mean, that's – it seems like a sensible dividing line. Well, Your Honor, even if the MSPB lacks the authority to strike down a Federal statute, I still think it might be able to adjudicate the claim of the employee, the second employee, who brings it as an as-applied challenge, because the Court would – sorry, I'm sorry, not the Court, the MSPB could decide that case on the same constitutional avoidance grounds that are urged by the first employee. That is, they really are the same case. Before striking down a statute as constitutional, this Court all the time, and instructs lower courts, and this would be true of agencies, too, should interpret the statute to avoid any significant constitutional harm. Alito, they're not at all the same claim. They're related, but one says the statute means something, and insofar as it's applied to a particular situation, it's unconstitutional. The other one says it doesn't mean that. Well, Your Honor, I think they are the same in the respect that, as I was just saying to Justice Kagan, if the MSPB doesn't have the authority to strike down a Federal statute, it's unconstitutional. If the MSPB doesn't have the authority to strike down a Federal statute, it's unconstitutional. No, Your Honor, but there may be ambiguity in a statute that the Court interprets to avoid a significant constitutional question. So maybe I can give another example that might flesh this out a little bit. There's a statute, 5 U.S.C. 7311, that bars from Federal employment people who have participated in strikes. Now, it's easy to think of an employee who raises a factual or statutory challenge to that claim. He says that what he did wasn't participating in a strike, either factually or shouldn't be considered participating in a strike within the scope of the statute, and he also challenges the statute on constitutional grounds. And the most common case brought to the MSPB in our experience that raises a constitutional claim also raises the sort of factual and statutory claims I was just suggesting. Now, the MSPB might resolve that first question, those first set of questions in such a way as to avoid the constitutional question by saying that the statute doesn't reach the conduct that the particular employee engaged in. And if we imagine instead that the employee had only brought the constitutional claim, which would be kind of a strange way to litigate, because he'd be giving up arguments on which he might win, I still think that the MSPB could decide, look, before we send this off to the Federal Circuit and decide that the only way we can grant you relief is to say that a Federal statute is unconstitutional, which is something we don't think we can do, we should at least take a look at the statute to see whether these somewhat ambiguous terms, participate and strike, actually do apply to your conduct. And by failing to give the MSPB the first crack at doing that, which Ginsburg-Ginsburg Is there any such possibility in this case? I mean, the statute says men must register for the draft. There's no way to avoid, to re-read that statute to say anything other than that. So I don't, I don't see any constitutional avoidance. Feigin I agree with that, Justice Ginsburg. In this case, we don't think the constitutional question could be avoided, and we don't think the MSPB could have granted relief. But I don't think the Court should essentially throw everything out just because of this case. Their position is going to make for unclear jurisdictional rules, and employees aren't going to know where they're entitled to go or where they're supposed to go. Sotomayor Go back to your interesting suggestion that the Board should decide the constitutional issue. And I've just been spending a little bit of time going through the Act, and you're certainly, it doesn't appear that there's anything in the Act that precludes them from granting any appropriate relief with respect to an unlawful discharge. Am I correct? Feigin That's correct, Your Honor. The statute does not, as we explained in our brief, draw any distinction between the types of arguments that would be made in seeking to set aside an unlawful discharge. Kagan But that's weird in another way, isn't it, Mr. Feigin? Because can we really imagine in the real world the MSPB deciding that the Selective Service Act is unconstitutional? I mean, what do they know about that question? Feigin Well, as everyone agrees, and as Mr. Schwartz was discussing with the Court, the MSPB does have expertise on unconstitutional claims. The MSPB are a set of persons that are appointed by the President and confirmed by the Senate. Kagan Well, but this is a question, and you can take the point that I'm just talking about this case, but this is a question about whether women should have to register for the draft in the same way as men should. That goes to defense policy, it goes to equal protection law. It doesn't seem to have anything to do with workplace issues of the kind that the MSPB is expert on. Feigin Well, I think that's right, Justice Kagan. But the CSRA doesn't draw distinctions between the types of arguments that are being made. It draws distinctions, as Justice Sotomayor was just suggesting, about what sorts of personnel actions it covers. Alito And I think Congress is unhappy when this Court holds a statute unconstitutional. Do you think it's really likely that they intended for the MSPRB to have the authority to declare its acts unconstitutional? Feigin I don't, Your Honor, and that's why our primary position is that the MSPB does not have that authority. Breyer Why? I mean, it sounds really what the argument boils down to, is if we accept your position, there's a kind of procedural complexity and anomaly, and your argument is that his position is worse. And yours is also fairly bad. So that's his point. So, I mean, that's why I wondered. I mean, U.S. magistrates, all tax courts, all kinds of people as a preliminary matter have jobs where they say, we think a statute is unconstitutional. I suppose millions, I don't know how many. So is this coming that they can't do it from some kind of lore from Kenneth Davis or something? What's the basis of this? And wouldn't it be simpler if you just said it says they can take appropriate relief? They can take appropriate relief, period, end of the matter. Feigin It's coming from statements by this Court and also statements by Kenneth Davis in his 1958 administration.  No, the Court usually just sort of says this in passing. And the Court made very clear in Thunder Basin, this is just a general presumption about the authority of administrative agency. It doesn't have to be. Ginsburg He wrote that it's one such case. I don't recall in that case anybody referring to any administrative law treatise. Feigin Well, that treatise is cited, for example, by the Court cites the Mine Commission cases that themselves cite the treatise. But the point is, Justice Breyer, even if our rule does have a couple of hiccups with it, we do think it is much superior to the rule the Petitioners are urging, because there are clear jurisdictional rules. Roberts In your brief, you're quite careful, and you have been today, to talk, say, even if the MSPB lacked this authority. It's your position that the MSPB does lack this authority, in fact, right? It's not just the MSPB's position. Feigin Yes. We agree with the MSPB's position that it lacks the authority to strike down a statute's constitutional. However, if it is a difference between adopting Petitioner's position or holding that the MSPB has the authority to declare a statute unconstitutional, we think Congress would have greatly preferred the latter, because that preserves the basic idea of the CSRA, which was to consolidate and streamline judicial review. As this Court recognized in Fausto, Congress specifically did not want challenges to adverse actions to go through district court and to the court of appeals and get a duplicative and wasteful two-layer judicial review. Alito If anybody who drafted or voted for the Civil Service Reform Act had thought about a case like this, where it's a pure question of law, a facial challenge to the constitutionality of a statute, do you think they would have said, well, the way we think that this should be handled is this scheme that you have proposed? Feigin I think they would have preferred it to a scheme where, first of all, the claims go to district court, which is precisely what the CSRA was trying to eliminate, and second of all, to a scheme where it becomes confusing and dependent on precisely how a plaintiff frames his argument, which court winds up entertaining the claim. Now the other case where an appellate court has a plaintiff who is a plaintiff has authority to decide a question that the court of first instance lacked authority to decide. You say MSPB says it has no authority, and you agree with that. I couldn't think of another case where a court of appeals, which is a court of review, not first view, substitutes itself for an incompetent court of first instance. Feigin Well, Your Honor, first of all, we cite several examples of courts of appeals deciding constitutional questions in the first instance at pages 37 to 38 in our brief. Another example would be this Court's decision in INS v. Chadha, the legislative veto case, which came up from the Board of Immigration Appeals. The Board of Immigration Appeals said it didn't have authority to adjudicate the separation of powers question. It was reviewed by the Ninth Circuit and then reviewed by this Court. Kagan Mr. Feigin, could I go back to the Chief Justice's question about what actually would happen in the MSPB? Presumably in this case, what the plaintiffs seek to do is to develop an extensive factual record showing how much has changed in the military in terms of the role that women play in the military, and that it's almost impossible to litigate this kind of claim without having such a record. That's the entire basis for arguing that Rosker is outmoded, given current military operations. So how could the plaintiff develop that record that is needed to litigate this claim? Feigin You would develop it in the MSPB, either in the first instance on the initial appeal, or the MSPB could let it go to the Federal Circuit without having developed an administrative record, and the Federal Circuit, if unlike either of the judges to address the merits in this case, believed that a factual record was necessary, it could remand to the MSPB with instructions that the MSPB take evidence and develop  Scalia I don't like that at all. That's ridiculous. Send it back to an agency that has no jurisdiction over the question, you know. Make fact findings on this question over which you have no jurisdiction. Can you give any example where that occurs elsewhere? Why wouldn't the preferable course be to appoint a master, have the Federal Circuit appoint a master to do it? Feigin Your Honor, if the Court believes that that is a better way to reconcile the scheme, we wouldn't oppose that either. But Roberts Well, I don't like that. I mean, the idea of the special masters floating around freely every time you get one of these cases, I mean, inevitably what's going to happen is that you're going to have a more or less permanent special master who gets all these things. You're not going to appoint 85 special masters if there are 85 of these sorts of claims. It seems to me you've got an agency there that's expert in the interrelation between the different provisions in the statute and, you know, why don't, why don't they make fact findings all the time in areas within their authority to decide. It seems to me it's ready-made for sending these things back. Feigin That was our position, Your Honor. Scalia But this is not an area that's within their expertise to decide what do they know about the military and when is that ever relevant to anything that they decide. It's utterly irrelevant to their work. And you're telling them to take — Feigin Well, first of all, Your Honor, I think it's actually going to be a fairly rare case in which a challenge to a legislative act of passing a statute is really going to turn on some sort of factual finding like credibility determination  Sotomayor Well, but this is that case. Feigin — like a credibility determination or something that's uniquely within the competence of a trial court or an agency with trial court-like powers. I think what might be more common, Justice Feigin, is that you might need to develop some sort of administrative record. But once the evidence is submitted, the conclusions one would draw from that evidence will be fairly obvious. For example, in Rosker v. Goldberg, there was discovery, there was evidence submitted, and then the parties were able to stipulate to the facts that would set forth review. So in this case, for example, I don't think there's really going to be a dispute that the MSPB is going to have to resolve about what sorts of positions women can serve in in the military. I think the government is going to be willing to stipulate to that. Alito I suspect that if this were litigated in district court, the government would move to dismiss and would take the position that it doesn't matter, even if women can now do 99 percent of the things that are done in the military, the Registration Act is still constitutional. Wouldn't you take that position? Feigin Your Honor, I don't think that's the case. Alito Would you say that if it can be proven that women are now — that the percentage is now high enough, the statute may be unconstitutional? Anyway, assuming that you might take that position, then — and you might win on that — then what would be the point of having all of this discovery that you're talking about, all of this development of a factual record? What sense does it make to develop a big factual record before you know whether it's even — whether it even makes any difference? Feigin Your Honor, the way to deal with that would be to just have a very quick stop in the MSPD, which assures itself, yes, this is a constitutional challenge to a statute. As the Court recognized in Weinberger v. Salfie, for example, it is useful to have a — at least exhaust the claim of the agency for that purpose. Yes, it is useful to have a constitutional challenge to a statute. Sotomayor Is there any rule of the Board that stops a litigant from making a proffer — an offer of proof? Feigin There is not, Your Honor, and, in fact, we — Sotomayor Wouldn't that be the preferable way of doing it, if you're going to go up on a constitutional claim? You make your offer of proof, and then the Federal Circuit can decide if it needs more evidence or not. Feigin That's where I was going with this, Your Honor. In fact, the MSPB has a special rule, I believe it's 5 CSR 1201.61. It's cited in our brief, where even if the MSPB decided not to accept evidence for some reason, a description of the evidence would go in the record and therefore be available for the Federal Circuit. Roberts What if — I guess that the party doesn't even have to raise its constitutional claim before the MSPB, does it? Feigin Well, the Federal — Roberts But it's pretty odd to say that you somehow waived a claim you couldn't pursue. Feigin Well, the Federal Circuit has, in analogous cases, decided constitutional claims that weren't raised in front of an agency when the agency couldn't decide them. In the government's view, it would make sense to exhaust, for the reasons I was explaining earlier and to Justice Ginsburg, which is that it may be that the MSPB finds that the statute doesn't really cover this situation. Now, I acknowledge that's not going to happen in this case. It is clear that Section 3328 required these people's removal. Scalia You're actually proposing that you have to exhaust questions that the agency has no authority to decide? Feigin Yes, Your Honor. I think the Court has recognized that. Scalia Curiouser and curiouser. If you don't bring before the agency a question that the agency says it has no authority to decide, you have forfeited your ability to? Feigin Well, Your Honor, I don't think what should happen in a case like this is that the employee appeals to the MSPB and says nothing at all. The employee should appeal to the MSPB and at least say what his constitutional claim is. And the benefit of that, as the Court's recognized in, for example, Weinberger v. Salphy, is that the agency can assure itself, yes, it's a constitutional claim that's beyond my authority to resolve, and there's no other way for me to resolve it. Another benefit of presenting these claims to the agency is the MSPB hasn't been crystal clear about exactly where its authority begins and ends, and neither the Federal Circuit nor this Court has addressed that question at all. And allowing the agency in the first instance to determine whether it has the authority to grant the plaintiff the relief he is seeking has a great benefit of clarifying what the scope of the MSPB's authority is. It makes a lot more sense for the MSPB and the Federal Circuit to be deciding what the scope of the MSPB's authority is than it is to file a claim in the District of Massachusetts and have that district court and then the First Circuit debating about what the proper scope of the MSPB's authority is. I think the CSRA expresses a clear preference that appeals of adverse actions like this go through the MSPB and to the Federal Circuit so that they can decide those kinds of questions. Ginsburg. Where did Salphy go? The agency couldn't decide the constitutional question. So what's the next stop? Was it a court of appeals or a district court? Feigin. Salphy, Your Honor? That would have been in district court. However, under 42 U.S.C. 405G, which was at issue in Salphy in Illinois Council, the district court is performing essentially appellate-style review of the agency's findings. That is, any fact the preferred course is that any additional fact findings that would be necessary would be made on remand and not taken by the district court. Not on the constitutional question. I think it would still be the preferred course that the agency would do any further fact finding that would be necessary in the first instance. Why? The district court is that's what it's equipped to do, and it does all the time. And under 405G, rather than 1331, the preferred form of fact finding is in the agency and remands to the agency for further fact finding rather than development of the facts in the district court in the first instance. In any event, the Court has recognized that in Thunder Basin, for example, where review in the first instance was in the court of appeals, that the court of appeals had adequate authority to give meaningful judicial review to a constitutional claim that an agency, in that case the Mine Commission, by hypothesis could not decide. Thank you. Roberts. Thank you, Mr. Fagan. Mr. Schwartz, you have two minutes remaining. Thank you. We are not here for an exercise in which side can best rewrite the Civil Service Reform Act so that the petitioner's claims can fit in it. What we're here for is to determine whether the background rule that federal courts have federal question jurisdiction under the common law and under section 1331 to rule on claims challenging the constitutionality of an act of Congress. Now, the fallback position is that that jurisdiction remains. What this court is tasked to do is to see whether it's fairly discernible from the Civil Service Reform Act as it was written by Congress, not as it's twisted or amended or bent to fit these claims in it, but whether the Civil Service Reform Act, as written by Congress, revokes that background federal court jurisdiction. And I suggest that the gyrations that have been discussed about, well, we can do this, we can go up, we can go down, we can do these odd procedures, show that it is not fairly discernible that Congress intended to somehow try to shoehorn these claims within the CSRA framework, and for that reason, not because the government system is better, not because the system that I'm proposing works better or is faster, but because there is no fairly discernible evidence from the Civil Service Reform Act as written by Congress that Congress intended to revoke this very fundamental jurisdiction of the district courts. This is a Marbury case, not a Bivens case. This is fundamental jurisdiction, the power of the federal court to say that Congress, not some federal agency, but that Congress acted in violation of the Constitution. And I suggest that it — the Court should act carefully before deciding that Congress took that fundamental jurisdiction away from the district courts, and that it is not fairly discernible that Congress did that through the wording of the Civil Service Reform Act. Thank you, counsel.